NOT FOR PUBLICATION (Doc. No. 10)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| JENNIFER McCRACKEN and CHRISTOPHER McCRACKEN, | |
| Plaintiffs, | Civil No. 09-4816 (RBK/JS) |
| v. | **OPINION** |
| TARGET CORP., et al., | |
| Defendants. | |

**KUGLER**, United States District Judge:

This is a slip-and-fall case. Plaintiff Jennifer McCracken fell while shopping at a Target department store in Turnersville, New Jersey. She and her husband assert negligence claims against Defendant Target Corporation ("Target"). Before the Court is Target's motion for summary judgment denying Plaintiffs' claims. Target argues that video footage from a surveillance camera shows that Ms. McCracken slipped on a liquid spilled by another customer less than three minutes earlier and no Target employees or customers walked near the spill during the intervening three minutes. According to Target, summary judgment is proper because the video footage proves that Target did not have actual or constructive notice of the spill. The Court denies Target's motion for summary judgment because: (1) there is an issue of fact as to whether the spill was caused by the dropped bottle depicted on the video; and (2) under New Jersey law, if a customer falls because of spilled merchandise in a store that uses a self-service mode of operation, the storekeeper bears the burden of proving that it took reasonable measures to protect customers.

1

I.      BACKGROUND

On August 11, 2007, Ms. McCracken and her husband, Plaintiff Christopher McCracken, along with their six-month old son, were shopping at the Target store in Turnersville, New Jersey.  They arrived at the store at approximately 1:30 p.m. and shopped for roughly forty-five minutes.  While the family was waiting to check out, Ms. McCracken left the queue to browse a section of the store called "Dollar World."[1]  Dollar World is bounded by the check-out lanes on one side and the pathway for a main entrance to the store on the other side.  Thus, customers entering the store walk directly past Dollar World.  At the front corner of Dollar World, and directly adjacent to the main pathway into the store, there are several rows of shopping carts and a stack of shopping baskets.[2]

The video footage from the surveillance camera shows that at approximately 2:22 p.m. a male customer cradling an unmanageable number of items with both hands walked up to the stack of shopping baskets and shoveled the items into a basket.  One of the items, a white bottle, bounced off the rim of the basket and fell to the floor.  The video appears to show a substance shooting from the bottle upon impact with the floor but Plaintiffs argue that the video is too blurry to see whether the bottle actually spilled any of its contents.  After dropping the bottle, the customer bent over and tipped the bottle upright, but left it on the floor and walked away with the basket containing the other items.  The video shows that, before the customer dropped the bottle, at least one other customer walked directly over the area where the bottle fell without any indication of a hazard or spill.

---

[1] Target employees also refer to this section of the store as "See Spot Save."  (Dep. of Sherry Lynn Annarelli 26:21-27:3).

[2] This configuration was subsequently changed because of renovations to the store.

Ms. McCracken appears on the video carrying her son at approximately 2:25 p.m., less than two and a half minutes after the customer dropped the bottle. She initially walked past the bottle but then turned and walked directly over the area where the bottle fell. She then slipped and fell backward into the stack of shopping baskets. Her son's head hit the baskets as she tried to break their fall by grabbing for the adjacent shelves. Ms. McCracken later testified that while on the floor she observed a puddle of clear or yellow-tinted liquid that contained black bubbles. (Dep. of Jennifer McCracken 54:15-55:19). She also remembered that the substance had a mint smell and that there was a streak through the puddle that looked like a tire track from a shopping cart. (Id. at 68:4-69:1). The video footage shows that after the unidentified customer dropped the bottle, no other customers or Target employees walked through the spill area. Ms. McCracken does not know how the spill occurred or how long it was on the floor before she fell.

After Ms. McCracken fell, a Target employee identified the dropped bottle as a container of mouthwash. Target employees cleaned up the spill and called an ambulance. When the paramedics arrived, they spoke with Ms. McCracken and noticed that her son had a cut on his head. They determined, however, that it was not necessary for either of them to go to the emergency room. Plaintiffs nevertheless drove themselves to the hospital for examination. Ms. McCracken experienced neck, back, and ankle pain and the doctors did an x-ray of her ankle, which was negative. Her son was treated for minor abrasions. Ms. McCracken testified that her son has not experienced any long-term injuries as a result of the fall. (Dep. of Jennifer McCracken 72:3-74:10). However, Ms. McCracken obtained subsequent MRI's and testing showing that she suffered injuries to her neck and wrist. She has received further treatment for those injuries.

Plaintiffs filed the Complaint in July 2009 in the Superior Court of New Jersey. The Complaint includes negligence claims by Ms. McCracken against Target and unidentified persons and entities responsible for maintaining and cleaning Dollar World. The Complaint also includes and a claim by Mr. McCracken for loss of consortium based on Defendants' negligence. Target removed the matter to this Court based on diversity jurisdiction under 28 U.S.C. § 1332 and answered. In October 2010, Target made the instant motion for summary judgment. Target argues that the video surveillance footage proves that Target did not have actual or constructive knowledge of the hazard, and, therefore, the Court should deny Plaintiffs' negligence claims. Plaintiffs respond that Target should have discovered the hazard because Dollar World is a high-traffic area and the evidence suggests that the spill may have occurred before the unidentified customer dropped the bottle. Plaintiffs also argue that, under New Jersey law, a plaintiff survives summary judgment if she demonstrates that her fall was caused by spilled merchandise in a store that uses a self-service mode of operation. The parties submitted their respective briefs and the matter is now ripe for decision.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony. Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572,

575 (D.N.J. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that would be admissible at trial. See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995). The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions [or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact. Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed. R. Civ. P. 56(e). "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' mandates the entry of summary judgment." Watson v. Eastman Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

### III. DISCUSSION

#### A. Plaintiffs' Negligence Claim Based on Constructive Knowledge

A storekeeper has a duty to provide a safe environment for its customers. Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003). That duty "requires a [storekeeper] to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Id. Generally, a storekeeper is not liable for injuries caused by dangerous conditions of which they were unaware. Brown v. Racquet Club of Bricktown, 471 A.2d 25, 29 (N.J. 1984). "Thus, ordinarily, the burden is upon the plaintiff to prove 'that the defendant [storekeeper] had actual or constructive knowledge of the dangerous condition caused by the accident.'" Valentin v. Toys "R" Us, Inc., No. A-3326-07T3, 2010 N.J. Super. Unpub. LEXIS 1579, at *4 (N.J. Super. Ct. App. Div. July 15, 2010)

(quoting Nisivoccia, 818 A.3d at 316).  A defendant has constructive knowledge "if the condition . . . existed for such a length of time that [the defendant] should have known of its presence." Bozza v. Vornado, Inc., 200 A.2d 777, 779 (N.J. 1964).

Applying those standards, New Jersey courts have found there is an issue of fact regarding a business owner's constructive knowledge if an obvious hazard existed on the premises for at least forty-five minutes.  Zizi v. Gabriele D'Annunzio Lodge, 83 A.2d 334, 335 (N.J. Super. Ct. App. Div. 1951); see also Milacci v. Mato Realty Co., 525 A.2d 1120, 1122-23 (N.J. Super. Ct. App. Div. 1987) (finding that there was a jury question regarding constructive knowledge where the hazard was caused by the gradual accumulation of dirt and sand); Ratering v. Mele, 78 A.2d 105, 107 (N.J. Super. Ct. App. Div.1951) (when plaintiff fell on stairs littered with cigarette butts, matches and paper, evidence indicating accumulation of litter over two and one-half hour period without inspection by defendant presented issue for jury's consideration as to defendant's constructive knowledge).  In Zizi, the court stated that "[a] time lapse of 45 minutes, or perhaps in given situations even a shorter one, may suffice to create a jury question upon the issue of notice." Zizi, 83 A.2d at 335.  However, neither party cites any authority discussing constructive knowledge where the accident occurred less than forty-five minutes after the hazard appeared.

Plaintiffs do not contend that Target had actual knowledge of the spill before Ms. McCracken fell.  Rather, they argue that material issues of fact exists regarding whether Target should have discovered the spill before Ms. McCracken fell because:  (1) the spill may have occurred before the customer in the video dropped the bottle; and (2) even if the spill occurred only minutes before Plaintiff's fall, Target should have identified it because the area is a high-

6

traffic corridor particularly susceptible to spills.  The Court agrees and denies Target's motion for summary judgment.

First, Plaintiff testified that the liquid she slipped on contained black bubbles and that there was a tire track running through the puddle.  The video footage shows that no one walked or pushed a shopping cart through the area after the unidentified customer dropped the bottle.  Thus, if the jury believes Ms. McCracken's testimony and infers from it that someone else passed through the puddle causing the dirty bubbles and tire track, it could reasonably conclude that the spill occurred earlier than when the unidentified customer dropped the bottle.  Because the spill's timing is material to deciding whether Target had constructive knowledge of the spill, summary judgment denying Plaintiffs' claims is improper.

Second, a jury could conclude that, in light of the circumstances, it is reasonable to require Target to be especially vigilant in monitoring the area where Plaintiff fell.  The area is immediately adjacent to a primary entrance for the entire store.  It is also adjacent to the shopping carts and shopping baskets.  A reasonable jury could conclude that Target should have known that frequent spills are particularly likely in this area because of the constant traffic, bottlenecking of customers, and the likelihood that customers would stop at the shopping carts and baskets and unload personal items or merchandise into the carriers.  Indeed, Target's positioning of a surveillance camera monitoring this area suggests that Target knew that it was a high-traffic area.  In light of those circumstances, a reasonable jury could conclude that Target should have monitored the floor to ensure that it was clear of hazards on a minute-by-minute basis, perhaps by assigning a "greeter" to monitor the areas near the entrance.  Thus, even if the spill occurred only minutes before Ms. McCracken's fall, a reasonable jury could conclude that

Target should have known about the spill because it should have vigilantly monitored its primary entrances for hazards.

### B.  Plaintiffs' Mode-of-Operation Negligence Claim

Although a slip-and-fall plaintiff must generally show that the storekeeper had actual or constructive knowledge of the hazard, New Jersey recognizes an alternative theory of liability. See Nisivoccia, 818 A.2d at 316.  The so-called "mode-of-operation" rule creates an inference of negligence sufficient to survive summary judgment "when a substantial risk of injury is inherent in a business operator's method of doing business." Id. (quoting New Jersey Model Jury Charges (Civil) § 5.24B-11).  The New Jersey Supreme Court has held that the mode-of-operation rule applies "when loose items that are reasonably likely to fall to the ground during customer or employee handling would create a dangerous condition." Id. at 317.  Thus, the New Jersey Supreme Court has applied the rule to "self-service" businesses where "a customer handles loose items during the process of selection and bagging from an open display." Id.

Under those circumstances, the plaintiff need only demonstrate that she fell as a result of spilled merchandise in a store that uses a self-service mode of operation. See Valentin, 2010 N.J. Super. Unpub. LEXIS 1579, at *6 (applying mode-of-operation rule).  If the plaintiff satisfies that initial burden, there is an inference that the storekeeper was negligent, and the burden shifts to the storekeeper to "come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." Nisivoccia, 818 A.2d at 316.  "This inference relieves the plaintiff of proving that the defendant had actual or constructive notice of the dangerous condition and instead requires the defendant to show that it did 'all that a reasonably prudent man would do in light of the risk of injury [the mode of operation] entailed.'" Valentin, 2010 N.J. Super. Unpub. LEXIS 1579, at *5 (quoting Wollerman v. Grand Union Stores, Inc., 221

8

A.2d 513, 515 (N.J. 1966)). "If the defendant provides no explanation, the facts presented by the plaintiff should allow a jury to find 'from the condition of the premises and the nature of the business that [the defendant], did not exercise due care in operating the [business], and that said negligent operation was the proximate cause of [the plaintiff's] injuries.'" Id. (quoting Bozza v. Vornado, Inc., 200 A.2d 777, 779 (N.J. 1964)).

Here, the parties do no dispute that Ms. McCracken fell in a self-service portion of the store. Dollar World and most of the Target store included various items in "an open display" for customers to "handle" during "the process of selection and bagging." Nisivoccia, 818 A.2d at 317. Additionally, although the parties dispute when the spill occurred, the evidence proves that spilt mouthwash caused Plaintiff's fall and that mouthwash is merchandise that Target sells from an open display. Thus, under the mode-of-operation rule, Plaintiffs present enough evidence to create an inference of negligence sufficient to survive summary judgment, and the burden shifts to Target to show that it took reasonable steps to protect against the harm created by its mode of operation. Valentin, 2010 N.J. Super. Unpub. LEXIS 1579, at *5.

On this motion, Target offers little evidence regarding the measures it took to keep the areas near the entrance of the store and Dollar World free from hazards and spills. Ms. Annarelli, a Target employee on the day of the accident, testified that it was Target's policy that all employees were responsible for cleaning up a spill whenever and wherever they occurred. (Dep. of Sherry Lynn Annarelli at 13:11-21). Ms. Annarelli also testified regarding the actions she took to clean up the particular spill that caused Ms. McCracken's fall. Although this evidence, along with the video footage, is relevant to whether Target took reasonable measures to protect against spills in Dollar World, it does not conclusively rebut the inference of negligence. If Target took no other measures to protect against spills in and around one of its

9

main entrances, a reasonable jury could conclude that it failed to satisfy its duty of care.  Thus, Plaintiffs' negligence claims survive Target's motion for summary judgment.

### IV.     CONCLUSION

For the reasons discussed above, Target's motion for summary judgment denying Plaintiffs' negligence claims is denied.[3]  An appropriate Order shall enter.


Dated: 4/18/11                                                               /s/ Robert B. Kugler
                                                                             ROBERT B. KUGLER
                                                                             United States District Judge

---

[3] Apart from the argument that Target was not negligent, Target does not argue that Mr. McCracken's loss of consortium claim is otherwise factually or legally deficient.  Thus, the Court does not address other legal or factual issues regarding that claim.